[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This lawsuit first came to this Court by summons and complaint dated January 6, 1997 and returnable February 25, 1997 claiming a dissolution of marriage, an equitable division of the parties' property, alimony, a request for restoration of birth name and any other relief the Court deemed just.
Plaintiff's financial affidavit accompanied the complaint.
The Defendant appeared by counsel on February 18, 1997, and on said date, filed an answer to the complaint and a cross complaint claiming dissolution, alimony, equitable property settlement, allocation of debt and such relief as in equity may pertain.
New counsel for the Plaintiff appeared on August 4, 1997.
Two motions made prior to trial were never acted upon.
The Plaintiff and the Defendant and their respective counsel appeared before the Court on March 31, 1998 and the matter was heard to a conclusion.
The Court makes the following findings of fact.
The Plaintiff and the Defendant were married on August 24, 1990 in Jewett City by a justice of the peace.
A year later on August 24, 1991, the parties reaffirmed their vows in a celebration involving family.
The parties have resided in this state for more than 12 months prior to the bringing of the petition. CT Page 4392
The marriage has broken down irretrievably.
There are no minor children issue of this marriage.
Neither of the parties have received assistance from the State.
The breakdown of the marriage occurred between 1994 and 1996 when the Defendant advised the Plaintiff that the marriage was over and told the Plaintiff he no longer loved her.
The Plaintiff vacated the residence of the parties on October 15, 1996, taking most of the furnishings, housewares and tools.
The Plaintiff claimed that the Defendant had engaged in inappropriate conduct with grandchildren, issue of other unions, but offered no independent evidence of the same, nor was any complaint ever made to any authority.
The parties had resided together before marriage.
The Defendant has had a roommate at his current address since November 1996.
In 1990, the parties bought a 2-1/2 acre parcel of land in East Haddam for $52,000.00, with a down payment of $26,000.00+, and a mortgage for the balance to the Moodus Savings Bank.
Title was taken in the joint names of the parties. The monthly mortgage payment was $352.00. The deposit money came from the Defendant.
The mortgage on the land is now in default and a foreclosure action is allegedly pending.
The Plaintiff has been employed in the past by the Norwich Bulletin, American Thermos, Wendy's in Texas, and presently works for National Maintenance, Inc., where she has been employed for seven years.
The Plaintiff does housekeeping work for her employer at the Sub Base in Groton.
The mortgage on the East Haddam property had been kept CT Page 4393 current through March 1996.
The Defendant had at one time been employed by Travelers where he did computer work.
The Defendant took trips to his high school reunion and to the funeral of a relative and the Plaintiff was not invited to accompany him.
The Defendant has taken fishing trips and skiing trips where the Plaintiff has not accompanied him.
The Plaintiff's hourly wage is $8.22 and she is paid every two weeks.
The Plaintiff lives in "affordable housing."
The Plaintiff is age 61 and represents she has high blood pressure.
The Plaintiff and the Defendant both have children issue of earlier marital unions.
This marriage is the second for the Defendant and the third for the Plaintiff, both have educations extending through high school.
The Plaintiff and the Defendant have not spoken to each other since the 1996 separation.
The parties initially resided in Jewett City and later moved to Salem.
When the Jewett City apartment security deposit was returned in the amount of $1,200.00, it was equally apportioned between the parties after some difficulties.
The parties during their marriage spent substantially more each year than their combined income.
When the Plaintiff and Defendant first married, the Defendant had an IRA account of approximately $12,000.00, less taxes, which was used and spent for the benefit of the parties.
The Defendant had left his position with Travelers, where he CT Page 4394 had been employed 19 years, prior to the marriage.
The Defendant has paid $3,500.00 to counsel representing him in the foreclosure action.
The Defendant became aware of financial problems when creditors started calling around October 1996.
The Defendant had left financial matters to the Plaintiff as concerns paying bills and creditors.
The Defendant represents that the only furnishings left to him when the Plaintiff left are a waterbed, a chair and a desk.
For a review of the bank statements of the Fleet accounts of the parties, see Defendant's Exhibits A, B and C as concerns withdrawals made by each.
The Defendant is age 56 and enjoys reasonably good health.
The Defendant will not commence receiving pension benefits from Travelers until age 62, at which time the benefits may approximate $400.00 weekly. This conflicts with the Defendant's financial affidavit of $200.00 weekly.
Incident to the Defendant's earlier dissolution of marriage, he had received $30,000.00, which was spent by the parties in this union relative to the East Haddam land and other expenses.
Discussion
This is a marriage of approximately 7-1/2 years, and the third for the Plaintiff and second for the Defendant.
The Defendant's position is that life consisted of eat, sleep and work, and that the parties lived beyond their means.
The Plaintiff's financial affidavit reflects a gross weekly income of $323.62, and a net of $247.34.
Plaintiff's weekly expenses are $284.65 and shows debt of $6,520.14.
Plaintiff owns a 1986 Toyota motor vehicle valued at $500.00 and shows $20.00 in the bank. CT Page 4395
Plaintiff's financial affidavit does not reflect her 1/2 equity ownership in the East Haddam land although the title, according to the testimony, stands in joint names.
The Defendant's financial affidavit reflects a gross weekly income of $580.00, and a net of $424.00.
Debts owed by the Defendant in his name alone total $16,461.00.
The Defendant values the East Haddam parcel presently at $30,000.00, on his financial affidavit, with a mortgage balance of $17,000.00, for a total equity between the parties of $13,000.00. No written appraisal was provided to the Court. The Defendant believes he may be able to salvage the real estate if he can come to terms with the foreclosing bank. The Defendant testified that the property had been appraised at $25,000.00.
The Defendant owns a 1998 truck with a minus equity, 13 shares of Travelers, valued at $55.00 a share, which predates the marriage, and his Travelers vested pension at $14,000.00, according to his affidavit.
The Law
At the time of entering a decree annulling or dissolving a marriage . . . the Superior Court may assign to either the husband or wife all or any part of the estate of the other.
In fixing the nature and value of the property, if any, to be assigned the Court, after hearing the witnesses, if any, of each party . . . shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income.
The Court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates.
Connecticut General Statutes (C.G.S.) § 46b-81 (a) and (c). CT Page 4396
The Court also considers C.G.S. § 46b-82.
The Court enters the following orders.
The Plaintiff shall execute a quit claim deed conveying her equity interest in the East Haddam parcel to the Defendant and the Defendant shall indemnify and hold the Plaintiff harmless as concerns the Moodus Savings Bank mortgage.
The real estate being in foreclosure, the Defendant shall hold the Plaintiff harmless as concerns any deficiency judgment that may occur.
The Plaintiff may retain all of the personalty and furnishings presently in her possession and her automobile.
The Plaintiff shall be responsible for the three debts shown on her financial affidavit totaling $6,520.14, and the Defendant shall be responsible for the debts shown on his financial affidavit totaling $16,461.00.
The Defendant may retain his 1998 Mazda truck, on which $20,000.00 is due for a minus equity.
The Defendant shall, in cooperation, with his employer, provide health insurance for the Plaintiff for a period of three years; the monthly cost not to exceed $56.00 in accordance with the testimony at trial.
The Defendant may retain his 13 shares of Travelers stock valued at $715.00.
The Defendant shall pay to the Plaintiff the sum of $6,500.00 from that portion of the Traveler (TSP) fund that may be presently available to him after taxes.
The Defendant may retain his interest in his Traveler's pension.
Each of the parties shall be responsible for their respective attorney's fees.
The Plaintiff may have her maiden name of Calkins restored to her. CT Page 4397
No order of periodic alimony is entered as to either party.
The parties are declared to be single and unmarried.
The items shown on Defendant's proposed orders to wit:
a. birth certificate
b. class ring
c. cancelled checks
d. boat cruise tape
e. TV cable box
have been delivered over at time of trial to the Defendant or will be delivered when located by the Plaintiff.
Austin, J.